IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **PATRICIA JACO, in her individual capacity and as ADMINSTRATOR OF THE ESTATE OF GENILLA BAUCKMAN, Deceased,**<br><br>Plaintiff,<br><br>v.<br><br>**MONTICELLO SQUARE LLLP,**<br><br>and<br><br>**LELIA HANKINS**<br><br>Defendants. | Case No. **3:24cv887** |

## COMPLAINT

Plaintiff Patricia Jaco, in her individual capacity and as Administrator of the Estate of Genilla Bauckman, deceased, by counsel, hereby submits her Complaint seeking judgment against Defendants Monticello Square LLLP, and Lelia Hankins, jointly and severally. In support of her claims, and the claims of the Estate of Genilla Bauckman, Plaintiff alleges as follows:

### I. INTRODUCTION

Defendants Monticello Square LLLP and Lelia Hankins, its general partner and registered agent serving as property manager, unlawfully discriminated against Genilla "Peggy" Bauckman and Patricia "Pat" Jaco. Defendants refused to renew Ms. Bauckman's lease due to her disability, and the request for reasonable accommodations and modifications made on her behalf by Ms. Jaco. In doing so, Defendants violated the Fair Housing Act, the Virginia Fair Housing Law, and the

1

property manager's duty of care. This caused economic and non-economic damage to both Ms. Bauckman, who was humiliated and made homeless by the action, and to Ms. Jaco, who helped care for Ms. Bauckman when Defendants displaced her from her apartment.

This Complaint is filed and these proceedings are instituted under the Fair Housing Act 42 U.S.C. § 3601, *et seq.*, the Virginia Fair Housing Law Va. Code § 36-96.1, *et seq.*, and at tort. Plaintiffs pray for a permanent injunction, actual damages, punitive damages and attorney's fees.

## II.  PARTIES

1. Defendant Monticello Square LLLP is a Virginia limited partnership registered with the State Corporation Commission. The limited partnership's registered office address is 1007 Emancipation Highway, Fredericksburg, VA 22401, which is within the City of Fredericksburg.

2. Monticello Square LLLP owns the Subject Property and the rest of the apartment complex in which it sits. Monticello Square Apartments consists of approximately 267 apartments in Fredericksburg, Virginia.

3. Monticello Square LLLP did business as Monticello Square Apartments, Monticello Square Apartments, LLLP, Monticello Square Apartments LLLP, Monticello Square Apartment Limited Partnership, Monticello Square Apts, Monticello Square, and Stratford Square Apartments & Monticello Square Apartments at various times relevant to the Complaint. All of these fictitious names refer to Monticello Square LLLP.

4. Defendant Lelia Hankins is an individual whose principal place of business and employment is within the City of Fredericksburg.

5. Defendant Hankins is a general partner of Defendant Monticello Square LLLP and serves as the entity's registered agent with the State Corporation Commission. Defendant's address as registered agent is located at 1007 Emancipation Highway, Fredericksburg, VA 22401.

6. At all times relevant to this Complaint, Defendant Hankins was employed by Monticello Square LLLP to serve as the Property Manager supervising the on-site manager June Ferguson. Defendant Hankins supervisory responsibilities included setting and enforcing rules and policies, deciding whether to grant reasonable accommodation requests, determining who can and cannot rent, and terminating leases.

7. At all times relevant to this Complaint, Defendant Hankins held a real estate license issued by the Commonwealth of Virginia, number 0225092505.

8. Plaintiff Patricia Jaco (Plaintiff) is the Administrator of the Estate of Genilla Bauckman. Ms. Bauckman died on August 9, 2022. Ms. Bauckman was a tenant of Defendants at the subject property from August 1, 2020, to August 31, 2021. Plaintiff brings claims set forth herein on behalf of the Estate of Ms. Bauckman and in her individual capacity. Ms. Jaco is the sister-in-law of Plaintiff Bauckman and served as her primary caregiver at all times relevant to the Complaint until Ms. Bauckman's death.

### III. JURISDICTION AND VENUE

9. This Court has federal question jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred within the Eastern District of Virginia.

12. Assignment to the Richmond Division of the Eastern District of Virginia is proper, pursuant to Eastern District of Virginia Local Rules 3(B)(4) and (C) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in Fredericksburg, Virginia.

## IV. FACTUAL ALLEGATIONS

13. On August 1, 2020, Peggy Bauckman moved into apartment 80-B in Monticello Square Apartments. She was 91 years old.

14. At all times relevant to this Complaint, Ms. Bauckman was a person with a disability. She used a wheelchair when traveling outside the home and used a walker or rollator within her apartment. Ms. Bauckman had mobility limitations that impaired her regular life activities, such as caring for herself, performing basic tasks, and walking.

15. Pat Jaco is Ms. Bauckman's sister-in-law. She served as Ms. Bauckman's primary care provider.

16. Ms. Jaco further served as Ms. Bauckman's power of attorney, signing documents and making payments on her behalf.

17. Ms. Jaco signed Ms. Bauckman's lease with Defendant Monticello Square LLLP twice, both as Ms. Bauckman's power of attorney as well as in her own capacity as a co-signer.

18. Friends, neighbors, and family members, including Ms. Jaco and her husband, supported Ms. Bauckman during her time renting with Monticello Square LLLP by visiting her, performing tasks, and driving her to appointments.

19. The Defendants had the power to grant or deny Ms. Bauckman's reasonable modification and reasonable accommodation requests at her apartment.

20. The Defendants further had the power to grant or deny Ms. Bauckman's reasonable modification requests to common or limited common elements at Monticello Square Apartments.

21. The Defendants had the power to decide whether to renew or non-renew Ms. Bauckman's lease.

22. There are multiple steps outside of apartment 80-B that Ms. Bauckman needed to traverse to get from the apartment to the sidewalk and parking lot. Alternatively, she could exit her apartment from a patio entrance, which also included a step.

23. When Ms. Bauckman moved in, apartment 80-B did not have a designated handicap parking spot.

24. On the Defendants' move-in forms, Ms. Bauckman marked that she used both a wheelchair and a walker. Ms. Bauckman, and Ms. Jaco on her behalf, told June Ferguson, the on-site manager, that Ms. Bauckman used a wheelchair.

25. In or around September 2020, roughly one month after Ms. Bauckman moved into apartment 80-B, Ms. Jaco orally asked Ms. Ferguson for designated handicap parking signs in front of Ms. Bauckman's apartment. She asked both on her own behalf as a care provider and on behalf of Ms. Bauckman. Ms. Ferguson did nothing.

26. At this same time, Ms. Jaco also asked for a wheelchair ramp to get Ms. Bauckman in and out of her apartment. Ms. Ferguson rejected the request for the ramp.

27. Finally, Ms. Jaco asked for a curb cut—a section of a curb that is graded into a short ramp to the street—to ease access to the parking lot for Ms. Bauckman in her wheelchair. Ms. Ferguson denied that request too.

28. In or around October or November 2020, Ms. Jaco again orally asked Ms. Ferguson for handicap parking signs in front of Ms. Bauckman's apartment and a ramp to navigate the steps.

29. Ms. Jaco explained to Ms. Ferguson that the ramp was the only way to easily get Ms. Bauckman in and out of the unit. Ms. Jaco made it clear that the handicap parking sign and the ramp were necessary for Ms. Bauckman to fully use and enjoy the property.

30. Ms. Ferguson again denied the request and stated that if she did not like it, then Ms. Bauckman could move out. Ms. Ferguson rejected the reasonable accommodation and reasonable modification requests on behalf of and at the direction of the Defendants.

31. The Defendants also refused to enlarge parking spaces or designate a walkway to make them accessible.

32. After an undue delay of nine months, Defendants installed a handicap parking sign.

33. Defendants refused to install a curb cut or ramp for Ms. Bauckman to get in and out of her apartment.

34. Ms. Jaco and Ms. Bauckman's other friends, family, and caregivers had to use a fold-up ramp to get Ms. Bauckman in and out of her apartment. They had to move the ramp for each step.

35. The Defendants refused to let Ms. Bauckman and her friends, family, and caregivers leave the ramp out, so they had to collapse and store the ramp in the apartment after each use, including for short trips.

36. Ms. Jaco asked for parking permits that could be used by friends and family other than herself when they came to help Ms. Bauckman. Ms. Jaco explained that these other caregivers' cars were towed during even very brief visits, such that the time a caregiver might spend helping Ms. Bauckman into her home alone presented a risk of towing.

37. The Defendants initially refused to issue any parking passes at all, arguing that Ms. Bauckman had no car and Ms. Jaco was not a tenant herself and therefore not entitled to a parking pass. After six months and multiple requests, the Defendants issued Ms. Jaco a single transferable parking pass. This pass had to be shared between all of Ms. Bauckman's caregivers.

38. A year after Ms. Bauckman moved in, and on or about August 1, 2021, Ms. Ferguson sent notice to Ms. Bauckman that her lease was not being renewed. The notice stated "THIS IS YOUR THIRTY (30) DAY NOTICE TO VACATE APARTMENT 80B YOU MUST BE OUT BY August 31, 2021." The Document was signed "Monticello Square Apartments, LLLP." See **Exhibit A**.

39. Ms. Jaco called Ms. Ferguson the next day to ask the reason for the notice to vacate. Ms. Ferguson said that the owner, Defendant Hankin on behalf of Defendant Monticello Square LLLP, decided not to renew and that they did not need to provide a reason for nonrenewal.

40. On the call, Ms. Jaco asked Ms. Ferguson if they could have additional time in the apartment while they found a new home for Ms. Bauckman. Ms. Jaco explained that Ms. Bauckman had nowhere else to go. Ms. Ferguson denied this request.

41. Defendant Hankins made the decision not to renew Ms. Bauckman's lease on behalf of Monticello Square LLLP.

42. As the move out date approached, Ms. Jaco again asked Ms. Ferguson for more time and to understand the reason for the notice to vacate. Ms. Ferguson denied the request for additional time and said that "we don't have to legally tell you why" they non-renewed the lease.

43. Regarding the request for an extension, Ms. Ferguson said that Ms. Hankins "doesn't change her mind" and that "once the decision is made, it's done."

44. Ms. Jaco responded that Ms. Bauckman was going to be homeless, and Ms. Ferguson replied "well that's your problem, not mine."

45. Ms. Bauckman always paid her rent on time at apartment 80-B.

46. Ms. Bauckman never had a lease violation at apartment 80-B.

47. The Defendants never sent Ms. Bauckman a notice of lease violation during her tenancy at apartment 80-B.

48. When asked later during the investigation why she chose not to renew Ms. Bauckman's lease, Defendant Hankins stated under oath, "I just made a decision," "I don't have an answer," and "there's not a rhyme or reason a lot of times."

49. Defendant Hankins later contradicted this explanation, stating, through counsel, that due to Ms. Jaco behavior in requesting parking accommodations "the Landlord ultimately determined that it would . . . not renew Bauckman's lease."

50. Defendants did not have a tenant ready to lease Apartment 80-B when Ms. Bauckman departed. It remained vacant for six months before being rented to a 25-year-old man with no known disabilities who stayed for a single one-year term of the lease.

51. As a result of the Defendant's conduct, Ms. Bauckman was left homeless and forced to move into the first floor of Ms. Jaco's home for two months while she continued her search for a new home.

52. Ms. Jaco and her husband expended time and resources moving Ms. Bauckman during this period, including hiring movers, taking time away to supervise moving and help pack, and renting temporary storage. Ms. Jaco paid one of Ms. Bauckman's friends and neighbors for assistance packing and moving.

53. Ms. Jaco's home had no bedrooms or toilets accessible by wheelchair. Ms. Bauckman had to sleep in a recliner in the living room because the first floor did not have space for a bed.

54. For these two months, Ms. Bauckman was largely confined to this recliner, lacking the mobility to leave or move about the home. She slept in the recliner. She was bathed in the recliner.

55. Ms. Jaco had to buy a temporary portable toilet that she placed in a laundry closet. The laundry closet was cramped and the door to the living room could not be closed when Ms. Bauckman went to use the toilet with her walker or rollator. Because the toilet did not flush, Ms. Jaco had to empty, clean, and disinfect the toilet after each use multiple times per day.

56. This living situation created extreme feelings of shame, despair, embarrassment, and hopelessness for Ms. Bauckman in addition to creating a significant additional care burden for Ms. Jaco and her family.

57. Ms. Bauckman eventually found a new apartment miles away from her friends and support network at Monticello Square Apartments. Ms. Jaco and others and spent hours moving Ms. Bauckman and her belongings to this new apartment.

58. At this new apartment, Ms. Bauckman did not have the opportunity to meet any of her neighbors. In contrast, Monticello Square was located near Mary Washington Hospital and had many other senior residents who became friends and frequent visitors to Ms. Bauckman.

59. In addition to not knowing any of her new neighbors, Ms. Bauckman lacked several important accessibility features at her new apartment. Her bathroom and shower lacked grab-bars to be able to easily move within the space. The passageways in the home were too narrow to be able to maneuver her rollator by herself. Her apartment was on the third floor rather than the ground level.

60. On August 9, 2022, Ms. Bauckman died--nearly one year after the Defendants refused to renew her lease.

61. Incredible hardship, emotional strain, and indignity marked the final year of Ms. Bauckman's life. She spent months trapped in a chair lacking any modicum of privacy in Ms. Jaco's home. She was separated from her friends who were once just steps away. Ms. Jaco would visit Ms. Bauckman in her final apartment and find her weeping—something that never happened just one year prior. All of this indignity is the direct result of the Defendants' actions.

## V. LEGAL CLAIMS

### COUNT ONE

**Fair Housing Act: Refusal to Rent or Otherwise Make a Dwelling Unavailable to Rent Injuring Genilla Bauckman – All Defendants**

62. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

63. The Defendants violated 42 U.S.C. § 3604(f)(1)(A) by refusing to rent or otherwise making a dwelling unavailable to rent because Ms. Bauckman was a person with a disability.

64. Ms. Hankins claimed under oath that she decides to renew some units and non-renew others. She claimed to not use any specific factors or considerations in making this decision.

65. When under oath, she offered no legitimate business reason for the differential treatment of Ms. Bauckman in non-renewing her lease.

66. Defendants did not subsequently rent out the unit to any new tenants, and instead left it vacant for six months.

67. Ms. Bauckman suffered economic and non-economic damages due to the discrimination she faced.

68. Defendants' actions demonstrated a willful and gross disregard for Ms. Bauckman's fair housing rights.

69. Defendants' violations entitle Ms. Bauckman's Estate to an award of actual damages, punitive damages, injunctive relief, attorney's fees and costs. 42 U.S.C. § 3613 (2023).

## COUNT TWO

**Fair Housing Act: Refusal to Rent or Otherwise Make a Dwelling Unavailable to Rent Injuring Patricia Jaco – All Defendants**

70. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

71. The Defendants violated 42 U.S.C. § 3604(f)(1)(C) by refusing to rent or otherwise making a dwelling unavailable to rent because Ms. Bauckman was a person with a disability, which in turn injured Ms. Jaco as a "person associated with that person."

72. Ms. Hankins claimed under oath that she decides to renew some units and non-renew others. She claimed to not use any specific factors or considerations in making this decision.

73. When under oath, she offered no legitimate business reason for the differential treatment of Ms. Bauckman in non-renewing her lease.

74. Defendants did not subsequently rent out the unit to any new tenants, instead leaving it vacant for six months.

75. Ms. Jaco co-signed Ms. Bauckman's lease and was known to Defendants as her Power of Attorney.

76. Ms. Jaco suffered economic and non-economic damages due to the discrimination Ms. Bauckman faced.

77. Defendants' actions demonstrated a willful and gross disregard for Ms. Jaco's fair housing rights.

78. Defendants' violations entitle Ms. Jaco to an award of actual damages, punitive damages, injunctive relief, attorney's fees and costs. 42 U.S.C. § 3613 (2023).

## COUNT THREE

**Fair Housing Act: Interference, Coercion, or Intimidation
Injuring Genilla Bauckman – All Defendants**

79. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

80. The Defendants violated 42 U.S.C. § 3617 by subjecting Ms. Bauckman to an adverse housing action after she engaged in a protected activity.

81. Ms. Jaco submitted, for the benefit of herself and Ms. Bauckman, multiple requests for reasonable accommodation and reasonable modification for Ms. Bauckman due to her disability as described herein.

82. These requests were protected activities under the Fair Housing Act.

83. Ms. Hankins was initially unable to identify any factors leading to Ms. Bauckman's non-renewal and could identify no valid business reasons for the action.

84. Defendants later, through counsel, claimed that they chose to non-renew Ms. Bauckman's lease due to Ms. Jaco's requests for reasonable accommodation and reasonable modification, which they characterized as "harassment."

85. Ms. Bauckman suffered economic and non-economic damages due to the hostile housing action she faced.

86. Defendants' actions demonstrated a willful and gross disregard for Ms. Bauckman's fair housing rights.

87. Defendants' violations entitle Ms. Bauckman's Estate to an award of actual damages, punitive damages, injunctive relief, attorney's fees and costs. 42 U.S.C. § 3613 (2023).

## COUNT FOUR

**Fair Housing Act: Interference, Coercion, or Intimidation
Injuring Patricia Jaco – All Defendants**

88. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

89. The Defendants violated 42 U.S.C. § 3617 by subjecting Ms. Bauckman to an adverse housing action after she engaged in a protected activity.

90. Ms. Jaco submitted, for the benefit of herself and Ms. Bauckman, multiple requests for reasonable accommodation and reasonable modification for Ms. Bauckman due to her disability as described herein.

91. These requests were protected activities under the Fair Housing Act.

92. Ms. Hankins was initially unable to identify any factors leading to Ms. Bauckman's non-renewal and could identify no valid business reasons for the action.

93. Defendants later, through counsel, claimed that they chose to non-renew Ms. Bauckman's lease due to Ms. Jaco's requests for reasonable accommodation and reasonable modification, which they characterized as "harassment."

94. Ms. Jaco co-signed Ms. Bauckman's lease, was known to Defendants as her Power of Attorney, and made protected requests under the Fair Housing Act on her behalf.

95. Ms. Jaco suffered economic and non-economic damages due to the hostile housing action Ms. Bauckman faced.

96. Defendants' actions demonstrated a willful and gross disregard for Ms. Jaco's fair housing rights.

97. Defendants' violations entitle Ms. Jaco to an award of actual damages, punitive damages, injunctive relief, attorney's fees and costs. 42 U.S.C. § 3613 (2023).

## COUNT FIVE

**Virginia Fair Housing Law: Refusal to Rent or Otherwise Make a Rental Unavailable Injuring Genilla Bauckman– All Defendants**

98. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

99. The Defendants violated Va. Code § 36-96.3(A)(8) and 18 VAC 135-50-80 by refusing to rent or otherwise making a dwelling unavailable to rent because Ms. Bauckman was a person with a disability.

100. Ms. Hankins claimed under oath that she decides to renew some units and non-renew others. She claimed to not use any specific factors or considerations in making this decision.

101. When under oath, she offered no legitimate business reason for the differential treatment of Ms. Bauckman in non-renewing her lease.

102. Defendants did not subsequently rent out the unit to any new tenants, instead leaving it vacant for six months.

103. Ms. Bauckman suffered economic and non-economic damages due to the discrimination she faced.

104. Defendants' actions demonstrated a willful and gross disregard for Ms. Bauckman's fair housing rights.

105. Defendants' violations entitle Ms. Bauckman's Estate to an award of actual damages, punitive damages, injunctive relief, attorney's fees and costs. Va. Code § 36-96.18.

## COUNT SIX

**Virginia Fair Housing Law: Refusal to Rent or Otherwise Make a Dwelling Unavailable to Rent Injuring Patricia Jaco– All Defendants**

106. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

107. The Defendants violated Va. Code § 36-96.3(A)(8) and 18 VAC 135-50-80 by refusing to rent or otherwise making a dwelling unavailable to rent because Ms. Bauckman was a person with a disability.

108. Ms. Hankins claimed under oath that she decides to renew some units and non-renew others. She claimed to not use any specific factors or considerations in making this decision.

109. When under oath, she offered no legitimate business reason for the differential treatment of Ms. Bauckman in non-renewing her lease.

110. Defendants did not subsequently rent out the unit to any new tenants, instead leaving it vacant for six months.

111. Ms. Jaco co-signed Ms. Bauckman's lease and was known to Defendants as her Power of Attorney.

112. Ms. Jaco suffered economic and non-economic damages due to the discrimination Ms. Bauckman faced.

113. Defendants' actions demonstrated a willful and gross disregard for Ms. Jaco's fair housing rights.

114. Defendants' violations entitle Ms. Jaco to an award of actual damages, punitive damages, injunctive relief, attorney's fees and costs. Va. Code § 36-96.18.

## COUNT SEVEN

### Virginia Fair Housing Law: Interference, Coercion, or Intimidation
### Injuring Genilla Bauckman– All Defendants

115. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

116. The Defendants violated Va. Code § 36-96.5 and 18 VAC 135-50-220 by subjecting Ms. Bauckman to an adverse housing action after she engaged in a protected activity.

117. Ms. Jaco submitted, for the benefit of herself and Ms. Bauckman, multiple requests for reasonable accommodation and reasonable modification for Ms. Bauckman due to her disability as described herein.

118. These requests were protected activities under the Virginia Fair Housing Law.

119. Ms. Hankins was initially unable to identify any factors leading to Ms. Bauckman's non-renewal and could identify no valid business reasons for the action.

120. Defendants later, through counsel, claimed that they chose to non-renew Ms. Bauckman's lease due to Ms. Jaco's requests for reasonable accommodation and reasonable modification, which they characterized as "harassment."

121. Ms. Bauckman suffered economic and non-economic damages due to the hostile housing action she faced.

122. Defendants' actions demonstrated a willful and gross disregard for Ms. Bauckman's fair housing rights.

123. Defendants' violations entitle Ms. Bauckman's Estate to an award of actual damages, punitive damages, injunctive relief, attorney's fees and costs. Va. Code § 36-96.18.

### COUNT EIGHT

**Fair Housing Act: Interference, Coercion, or Intimidation
Injuring Patricia Jaco– All Defendants**

124. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

125. The Defendants violated 42 U.S.C. § 3617 by subjecting Ms. Bauckman to an adverse housing action after she engaged in a protected activity.

126. Ms. Jaco submitted, for the benefit of herself and Ms. Bauckman, multiple requests for reasonable accommodation and reasonable modification for Ms. Bauckman due to her disability as described herein.

127. These requests were protected activities under the Fair Housing Act.

128. Ms. Hankins was initially unable to identify any factors leading to Ms. Bauckman's non-renewal and could identify no valid business reasons for the action.

129. Defendants later, through counsel, claimed that they chose to non-renew Ms. Bauckman's lease due to Ms. Jaco's requests for reasonable accommodation and reasonable modification, which they characterized as "harassment."

130. Ms. Jaco co-signed Ms. Bauckman's lease, was known to Defendants as her Power of Attorney, and made protected requests under the Fair Housing Act on her behalf.

131. Ms. Jaco suffered economic and non-economic damages due to the hostile housing action Ms. Bauckman faced.

132. Defendants' actions demonstrated a willful and gross disregard for Ms. Jaco's fair housing rights.

133. Defendants' violations entitle Ms. Jaco to an award of actual damages, punitive damages, injunctive relief, attorney's fees and costs. Va. Code § 36-96.18.

## COUNT NINE

### Negligence
### Injuring Ms. Bauckman – Defendant Hankins

134. Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

135. Defendant Hankins, as a property manager, had a duty of care at common law to refrain from illegal discrimination and behave consistently with applicable fair housing laws. This

17

duty is articulated in the Code of Ethics and Standards of Professionalism of the National Association of Residential Property Managers.

136. Defendant Hankins breached this duty of care when she non-renewed Ms. Bauckman's lease in a manner that was discriminatory and retaliatory in violation of the Fair Housing Act and the Virginia Fair Housing Law.

137. Ms. Bauckman suffered economic and non-economic damages due to Defendant Hankins breaching her duty of care.

138. Defendants' actions demonstrated a willful and gross disregard for Ms. Bauckman's fair housing rights.

## VI. RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court:

A. Assume jurisdiction of this case;

B. Award compensatory and punitive damages;

C. Declare that Defendants have violated the provisions of the applicable federal and state fair housing laws;

D. Enjoin all unlawful practices complained about herein and imposes affirmative injunctive relief requiring Defendants, its partners, agents, employees, assignees, and all persons acting in concert or participating with Defendants, to take affirmative action to provide equal opportunities to persons regardless of their race, familial status, disability, sex or gender, or other protected status; and

E. Award actual damages to Plaintiff against each Defendant pursuant to the applicable laws;

F. Award costs of this action, including reasonable attorneys' fees; and,

G.     Award all such other relief as the Court deems just.

## VII.   DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all issues in this case.

December 13, 2024

Respectfully Submitted,
PATRICIA JACO, individually and as Administrator of the Estate of GENILLA BAUCKMAN, deceased

                /s/
_____
Andrew Lucchetti (VSB No. 86631)
Halperin Law Center, LLC
4435 Waterfront Dr, Suite 100
Glen Allen, VA 23059
Phone: (804) 527-0100
Facsimile: (804) 597-0209
andrew@hlc.law

and

                /s/
_____
Moriah Wilkins (VSB No. 97286)
Housing Opportunities Made
    Equal of Virginia, Inc.
626 East Broad Street, Suite 400
Richmond, VA 23219
Phone: (804) 905-6793
Facsimile: (804) 354-0690
mwilkins@homeofva.org